STATE of Missouri ex rel. Lora M. FUGATE and Patricia J. Shilling, Relators,

v.

Honorable David P. ANDERSON, Circuit Judge, Greene County, Missouri, Respondent.

No. 19481.

Missouri Court of Appeals, Southern District, Division One.

Aug. 3, 1994.

Motion for Reconsideration and Rehearing/Application for Transfer to Supreme Court Denied Aug. 25, 1994.

Application to Transfer Denied Oct. 25, 1994.

Patricia J. Shilling, Metzger & Shilling, Ozark, for relators.

Steven E. Marsh, Hulston, Jones, Gammon & Marsh, Springfield, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

MONTGOMERY, Judge.

This is an original proceeding in prohibition. Relators seek to prohibit Respondent from taking any action to enforce an order entered April 11, 1994, alleged to be void because it altered or changed a final judgment entered October 18, 1993. We determine that our preliminary order issued April 14, 1994, should be made permanent.

In the underlying case, Relator Lora Mae Fugate is the plaintiff in a partition suit instituted against defendant Orvil R. Whitehead in the Circuit Court of Greene County.[1] Relator Patricia J. Shilling is Fugate's attorney in that action.

From the allegations of the petition for the writ, Respondent's answer, and Relators' re-

ply, the facts appear to be undisputed. The following are the significant events:

May 15, 1992  Fugate filed a two-count petition requesting partition of certain real property in Greene County, Missouri, and of five certificates of deposit and a checking account.

December 22, 1992  The personal representative of the Whitehead estate (hereafter called the Whitehead estate) was allowed to intervene and file a "Motion for Constructive Trust."

June 28, 1993  Trial was held on both the partition request and on intervenor's motion.

July 14, 1993  By letter, Respondent notified all parties of the court's findings regarding the partition action and overruled intervenor's Motion for Constructive Trust for lack of evidence.[2]

July 30, 1993  An interlocutory judgment was entered in the underlying case ordering sale of one tract of real estate. As to the personal property, the trial court determined that four certificates of deposit (one certificate of deposit no longer existed) and the checking account could be partitioned in kind and ordered that the personal property be equally divided between the parties.

October 4, 1993  A money judgment was entered in favor of the Whitehead estate against Fugate in the Probate Division of the Circuit Court of Greene County in Case No. CV292–553.

October 6, 1993  An Assignment of Judgment was filed in the underlying case wherein Fugate assigned to Dean Rodgers the sum of $28,000 out of "that certain judgment ... rendered on the 30th day of July, 1993...." The assignment further recited that an execution on the assigned portion of the judgment "may

---

1. Fugate and Orvil R. Whitehead are children of Orvil Whitehead who died sometime prior to May 15, 1992. His personal representative intervened in the partition suit. The result is mentioned in our recitation of facts.

2. In this letter, Relator Shilling was requested to prepare a judgment consistent with the court's findings. While the judgment entered on July 30, 1993, failed to mention intervenor's motion by name, the terms of the judgment clearly re-

veal that no constructive trust was imposed on assets sold or divided in kind between Fugate and Orvil R. Whitehead. We construe the judgment as a denial of intervenor's claim in accordance with the announcement in Respondent's letter of July 14, 1993. *See Cady v. Hartford Fire Ins. Co.*, 554 S.W.2d 499, 501 (Mo.App.1977); *Payne v. Payne*, 695 S.W.2d 494, 496 n. 3 (Mo. App.1985).

issue in the name of [Fugate] to be used for the benefit of [Rodgers] in accordance with the terms of this assignment."

October 7, 8, 12, 1993 Based on the judgment in Case No. CV292–553, garnishments were issued by the Whitehead estate, garnishing sums due Fugate, naming the Respondent, the circuit clerk, and the respective banks as garnishees.

October 8, 1993 After a court order to do so, Orvil R. Whitehead delivered the four certificates of deposit to the circuit clerk who gave him a receipt stating the certificates of deposit "will be kept in the Clerk's safe until further court order."

October 18, 1993 A judgment was entered in the underlying case approving the sheriff's report on the sale of real estate, ordering the sheriff to execute a deed to the purchaser and to disburse the sale proceeds of $24,750 in the manner described in the judgment. The judgment further incorporated by reference the terms of the July 30, 1993, judgment relating to the equal partition in kind of the personal property, and further affirmed and ratified those terms of said judgment.

December 23, 1993 The court sustained Orvil R. Whitehead's motion for an order directing the circuit clerk to deliver the certificates of deposit to the Bank of Ash Grove and Commerce Bank, the issuing banks. The order recited that "Orvil R. Whitehead shall be entitled to receive one-half of all proceeds" but that Fugate's "one-half of the proceeds . . . shall be paid to the Circuit Clerk . . . to be held until the rights and interests thereto may be determined."

February 4, 1994 In Case No. CV292–553, an order was entered quashing the garnishments of October 7, 8, and 12, 1993. On that day, the circuit clerk delivered the four certificates of deposit to Fugate

who obtained $13,444.92 by cashing the two certificates of deposit issued by Commerce Bank.[3]

February 24, 1994 Orvil R. Whitehead filed a motion to compel Fugate and Shilling to return the money obtained on February 4, 1994.

April 11, 1994 After an earlier hearing, Respondent entered an order directing Fugate and Shilling to return to the circuit clerk all proceeds received by either of them from the Commerce Bank certificates of deposit.

Relators contend Respondent exceeded his authority by entering the order of April 11, 1994, because the judgment of October 18, 1993, was a final judgment. Relators claim that judgment disposed of all issues between all parties and that after November 17, 1993, Respondent lost jurisdiction to modify, alter, or amend the judgment.

■ The first question is whether the judgment of October 18, 1993, was a final judgment. "A final judgment is one that disposes of all parties and all issues, leaving nothing for future determination." *Sinopole v. Morris*, 735 S.W.2d 194, 195 (Mo.App. 1987). Specifically, "[t]he final judgment in a partition suit where a sale of the land is ordered is the order approving the sale and providing for the distribution of the sale proceeds." *First Nat'l Bank of Carrollton v. Eucalyptus*, 721 S.W.2d 165, 167 (Mo.App. 1986).

Partition of personal property follows, as nearly as possible, the same procedure as that utilized in the partition of land. Rule 96.32.[4] When land is ordered partitioned in kind, the final judgment takes place when the commissioners' report is confirmed and judgment is ordered thereon. Rule 96.16.

From the foregoing principles we determine that the October 18, 1993, judgment was final in nature. The judgment disposed of the partition issues between Fugate and

---

3. The record does not reveal why the circuit clerk still had possession of the certificates of deposit on February 4, 1994, in light of the order entered on December 23, 1993. However, our decision does not require further attention to this puzzle.

4. Rule references are to Missouri Rules of Court (1994), unless otherwise indicated.

Orvil R. Whitehead and disposed of the intervenor's claim by denying it. Thus, all claims raised between the three parties were fully adjudicated, and nothing was left for future determination by the court. In particular, the judgment fully adjudicated the rights of Fugate and Orvil R. Whitehead in the certificates of deposit and checking account by dividing the assets equally between them.[5]

■ Contrary to Respondent's assertions, neither the Whitehead estate nor Dean Rodgers were adverse claimants to Fugate's share of the partition proceeds in a sense that would cause the judgment to lack finality. In the first place, Rodgers was not a party to the suit. Therefore, the court had no claim to adjudicate involving him. Secondly, Respondent cites no authority, and we find none, indicating that a partial assignment of a judgment is an unadjudicated claim which affects the finality of the judgment.

■ Unquestionably, the denial of the claim asserted by the Whitehead estate was an adjudication of the constructive trust issue. After that adjudication, no other issue remained in the case involving the Whitehead estate. Without citation of authority, Respondent asserts that since the Whitehead estate was a party to the partition suit and by virtue of its October 4, 1993, judgment, the Whitehead estate had a claim against Fugate's share of the proceeds which required adjudication.

Respondent fails to recognize that the only interest of the Whitehead estate in the partition judgment proceeds was that of a judgment creditor. The Whitehead estate acknowledged such status by its attempt to garnish. A "[g]arnishment in aid of execution is an incidental remedy whereby a plaintiff seeks to collect a judgment by reaching the defendant's property in the hands of a third party." *Tom Houlihan Men's Wear v. Wilkerson,* 407 S.W.2d 58, 60 (Mo.App.1966). Thus, the Whitehead estate was required to

show that the circuit clerk held property owned by Fugate in order to successfully garnish.[6] Clearly, by virtue of the garnishment action, the Whitehead estate was not a party to the partition suit asserting an adverse claim of ownership to Fugate's share of the proceeds.

■ The next question is whether Respondent lost jurisdiction to control the judgment 30 days after October 18, 1993. A trial court loses control over its judgment 30 days after entry of judgment. Rule 75.01. However, not later than 15 days after entry of a judgment in a court-tried case, a party may file a motion for new trial or a motion to amend the judgment, or both. Rule 73.01(a)(3);[7] *In re Marriage of Grigery,* 818 S.W.2d 738, 739 (Mo.App.1991). If timely and appropriate post-trial motions are filed, the power to control a judgment can be extended up to 90 days after the filing of the motions. Rule 81.05; *Lake Thunderbird Property Owners Ass'n, Inc. v. Lake Thunderbird, Inc.,* 680 S.W.2d 761, 763 (Mo.App.1984). No such post-trial motions were filed here after October 18, 1993. Therefore, on April 11, 1994, Respondent had no authority and was without jurisdiction to change, alter, or modify the final judgment of October 18, 1993. *Id.*

*State ex rel. Berbiglia, Inc. v. Randall,* 423 S.W.2d 765 (Mo. banc 1968), compels the result we reach here. There, a tenant sued its landlord to cancel the lease and for damages. The trial court entered a judgment on August 4, 1966, declaring the lease void 30 days after the date of the judgment. No appeal was filed by the landlord although an intervening party did appeal. The landlord filed a motion on December 14, 1966, requesting the court to set aside the earlier judgment because the tenant had failed to vacate the property. On January 17, 1967, the trial court entered a judgment in favor of the landlord because the tenant waived its

---

5. Certainly, Orvil R. Whitehead acknowledged the judgment's finality when he sought and received the December 23, 1993, order giving him his share of the certificate of deposit proceeds.

6. The garnishment was quashed after the court in Case No. 292–553 found "that Rule 76.075 R.C.P. has not been complied with."

7. This rule was in effect when the judgment of October 18, 1993, was rendered. Effective January 1, 1994, Rule 73.01(a)(4) expanded the 15–day limit to 30 days. Otherwise, this section remained the same as its predecessor.

right to abandon the leased premises. The Supreme Court determined that the August 4, 1966, *judgment fully decided and disposed of the whole merits of the cause* between the landlord, tenant, and intervenor; that it left no questions for future judgment of the court; that it was neither interlocutory nor conditional in any respect; and that it was a final judgment. *Id.* at 769. The court held that the respondent judge had exhausted his authority and was without jurisdiction to change, alter, or modify the earlier judgment or to enter another. As a result, the January 17, 1967, judgment was held to be void and ordered stricken from the record.

Here, we have seen that the October 18, 1993, judgment was final in nature like the first judgment in *Berbiglia.* Also like *Berbiglia,* the order of April 11, 1994, changed and altered what the earlier judgment had granted to Fugate. That judgment decided Fugate was unconditionally entitled to one-half of all certificate of deposit proceeds. The later order altered Fugate's absolute entitlement to the proceeds because compliance with it would require her, by virtue of the December 23, 1993, order, to face a determination of her "rights and interests" in property previously determined to be her own.

We hold that Respondent exceeded his jurisdiction in entering the April 11, 1994, order and that it is void and should be stricken from the record. Because of this holding the remaining point in Relators' brief need not be addressed.

Our preliminary order prohibiting the enforcement of Respondent's order of April 11, 1994, is now made permanent.

SHRUM, C.J., and FLANIGAN, J., concur.